UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sara A. Hathaway,                                     Civil No. 22-3040 (DWF/ECW)

        Plaintiff,

v.                                                                    **MEMORANDUM
                                                                      OPINION AND ORDER**

Neighborhood House, and Literacy
Minnesota, f/k/a Minnesota Literacy
Council, Inc.,

        Defendants.

_____

Daniel Gray Leland, Esq., Ryan T. Conners, Esq., Leland Conners PLC, counsel for Plaintiff.

R. Ann Huntrods, Esq., Samuel N. Louwagie, Esq., Taft Stettinius & Hollister LLP, counsel for Defendant Neighborhood House.

Bryan J. Morben, Esq., Erin M. Edgerton Hall, Esq., Fredrikson & Byron, PA, counsel for Defendant Literacy Minnesota.

_____

**INTRODUCTION**

      This matter is before the Court on Defendants Neighborhood House and Literacy Minnesota's separate motions to dismiss. (Doc. Nos. 5, 10.) Plaintiff Sara Hathaway opposes the motions. (Doc. No. 16.) For the reasons set forth below, the Court grants Literacy Minnesota's motion to dismiss and grants in part and denies in part Neighborhood House's motion to dismiss.

## BACKGROUND

Plaintiff Sara Hathaway[1] participated as a member in the AmeriCorps VISTA program. (Doc. No. 1-1 ("Compl.") ¶ 4.) Through this program, AmeriCorps provides funding to organizations who, in turn, supervise AmeriCorps VISTA members for a period of time. (*Id.*) Hathaway alleges that Defendant Literacy Minnesota selected Hathaway for a two-year position stationed at Defendant Neighborhood House. (*Id.* ¶¶ 11, 14.) Hathaway's work responsibilities included overseeing the library at Neighborhood House and driving the company van to deliver books. (*Id.* ¶¶ 17, 23.)

Throughout the program, Hathaway was open about their non-binary gender and sexual orientation. (*Id.* ¶ 18.) A custodian at Neighborhood House, Joe York, began targeting Hathaway for their gender and sexual orientation. (*Id.* ¶ 19.) Hathaway alleges that York acted aggressively towards them on a number of occasions. (*Id.* ¶¶ 19-30.) For example, York spat on Hathaway when they wore Pride apparel. (*Id.* ¶¶ 20-22.) York was also visibly angry when Hathaway signed out the company van, "emanating aggression and hatred" towards Hathaway and hovering over them while they worked. (*Id.* ¶¶ 25-30.) At one point, York interrupted a conversation between Hathaway and a coworker, showing the coworker "[what] appeared to be pornography" on York's phone. (*Id.* ¶¶ 37-38.) Hathaway alleges that York's behavior made them feel unsafe, and Hathaway took measures to avoid York while at work. (*Id.* ¶¶ 33-34.)

---

[1] Hathaway identifies as non-binary and queer and uses they/them/their pronouns. (Compl. ¶ 10.)

Hathaway went to the Director of Programs at Neighborhood House, Joan Schlecht, to discuss York's behavior but alleges that Schlecht was dismissive, saying "'that's just Joe' and similar comments." (*Id.* ¶ 36.) Hathaway then reported York's behavior to Neighborhood House's Director of Human Resources, Angela Steward-Randle. (*Id.* ¶ 40.) Steward-Randle told Hathaway that she would investigate, describing the situation as serious and noting that others had made reports about York's behavior in the past. (*Id.* ¶¶ 43-44.)

The following month, Hathaway alleges that Neighborhood House offered them a permanent position as a Volunteer Coordinator.[2] (*Id.* ¶ 55.) The position would begin once Hathaway finished the VISTA program. (*Id.*) That same day, Hathaway reported other instances of discrimination that they had witnessed at Neighborhood House. (*Id.* ¶ 54.)

The next day, AmeriCorps told Hathaway that Neighborhood House requested that their position be terminated. (*Id.* ¶ 56.) Neighborhood House's President, Nancy Brady, told Hathaway to leave the site immediately, and York escorted them out of the building. (*Id.* ¶¶ 57-59, 63.) After placing Hathaway on "Administrative Hold," AmeriCorps terminated Hathaway's employment. (*Id.* ¶¶ 65-66.) Hathaway alleges that their job offer from Neighborhood House was also rescinded following their termination from the VISTA program. (*Id.* ¶ 74.)

---

[2] The complaint alleges that "Sarah Berger[] offered Plaintiff a permanent position at Defendant Neighborhood House as a Volunteer Coordinator." (Compl. ¶ 55.) Although the complaint does not explicitly state that Sarah Berger was an employee of Neighborhood House, the Court can reasonably infer that fact.

3

Hathaway filed a complaint with AmeriCorps's Equal Employment Opportunity Program ("EEOP") the same day of their termination "based on the discrimination they had reported and the termination." (*Id.* ¶ 69.)  Separately, Hathaway brought this action against Neighborhood House and Literacy Minnesota, alleging sex and sexual orientation discrimination and reprisal in violation of the Minnesota Human Rights Act ("MHRA") and Title VII.  Neighborhood House and Literacy Minnesota now move to dismiss the action.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

4

level." *Id.* at 555.  As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

I.      **Title VII Discrimination and Retaliation—Counts 3 & 4**

Hathaway alleges that Neighborhood House and Literacy Minnesota engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964.  Congress, however, has exempted AmeriCorps and AmeriCorps sponsors from liability under federal employment law.  The AmeriCorps VISTA program is governed by the Domestic Volunteer Service Act of 1973, 42 U.S.C. § 4951 *et seq.*, and provisions of the National and Community Service Act of 1990, 42 U.S.C. § 12501 *et seq.*  Section 12655n(b)(1) makes clear that an AmeriCorps participant "shall not be considered a Federal employee and shall not be subject to the provisions of law relating to Federal employment."  The law further states that participants "shall not be considered to be an employee of the organization receiving assistance under the national service laws through which the participant is engaging in service."  42 U.S.C. § 12511(30)(B).  Given this clear language, Hathaway may not bring Title VII claims against Neighborhood House or Literacy Minnesota, because Hathaway was not an employee of either organization under federal law.

5

Courts interpreting the AmeriCorps statutes have similarly held that "AmeriCorps host organizations are not liable to AmeriCorps participants under federal wage and hour or employment discrimination laws," including Title VII. *O'Dell v. Hope Network W. Michigan/Michigan Educ. Corps*, No. 20-cv-11192, 2021 WL 3861106, at *9 (E.D. Mich. Aug. 30, 2021) (citing cases); *see Murray v. Am. Red Cross Cap. Area Chapter*, No. 07-cv-161, 2008 WL 11460707, at *3 (N.D. Fla. 2008) ("Because Ms. Murray was not an 'employee,' Title VII does not apply."). The Court therefore dismisses Hathaway's Title VII claims against Defendants (Counts 3 and 4) with prejudice.

## II. MHRA Claims—Counts 1 & 2

Hathaway also brings state employment discrimination claims against Literacy Minnesota and Neighborhood House under the MHRA. While Hathaway may not bring employment discrimination claims under federal law, Hathaway contends that the AmeriCorps statutes do not preempt state employment discrimination claims. Separately, Hathaway argues that Neighborhood House violated the MHRA when it offered Hathaway a job and then rescinded that offer based on Hathaway's gender and sexual orientation and their reports of discrimination. The Court addresses each argument in turn below.

### A. Claims Related to Hathaway's AmeriCorps Participation

To bring claims under the MHRA against Defendants related to Hathaway's time as an AmeriCorps VISTA member, Hathaway must allege an employment relationship with Defendants. *See* Minn. Stat. §§ 363A.08, subd. 2 and 363A.15. As noted above, federal law makes clear that AmeriCorps participants do not have an employment

6

relationship with their sponsors. *See* 42 U.S.C. § 12511(30)(B). Hathaway argues that although, under federal law, AmeriCorps participants are not deemed to be employees of their sponsor organizations, participants may still have an employment relationship with their sponsors under state law. In this way, Hathaway contends, the AmeriCorps statutes and the MHRA can operate in conjunction, without the federal statutes overriding the state law claims.

The Court finds Hathaway's argument unconvincing for several reasons. First, "Minnesota courts have a long history of interpreting the MHRA to be consistent with Title VII." *Darke v. Lurie Besikof Lapidus & Co., LLP*, 550 F. Supp. 2d 1032, 1043 (D. Minn. 2008). The Minnesota Supreme Court has stated that the definitions of "employee" and "employer" under Title VII are "sufficiently similar" to the MHRA such that courts may "consider Title VII principles." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 74 n.8 (Minn. 2020) (citation omitted). And "[i]n construing the MHRA, [Minnesota courts] apply law developed in federal cases arising under Title VII." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010) (internal quotations and citation omitted). That itself is strong evidence that if no employment relationship exists between a participant and their sponsor under Title VII, the same is true under the MHRA, as both Title VII and the MHRA "are governed by the same standards." *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008).

Next, and most importantly, federal statutes and regulations make clear that AmeriCorps participants are not, under any circumstances, employees of their sponsors. Thus, state laws that would create an employment relationship between AmeriCorps

7

participants and their sponsors directly interfere with these federal laws and are therefore preempted.

The Supremacy Clause provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. This Clause has given rise to the doctrine of preemption whereby "state laws that interfere with, or are contrary to federal law," are invalidated. *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (internal quotations and citation omitted). There are multiple ways in which federal law may preempt state law. Preemption may be express, "resulting from an express Congressional directive ousting state law." *Kinley Corp. v. Iowa Utils. Bd., Utils. Div., Dep't of Com.*, 999 F.2d 354, 358 n.3 (8th Cir. 1993) (citation omitted). Alternatively, preemption may occur of necessity, "[w]hen compliance with both federal and state regulations is a physical impossibility or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *All. Ins. Co. v. Wilson*, 384 F.3d 547, 551 (8th Cir. 2004). "[P]reemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may [preempt] state regulation." *Id.* (internal quotations and citation omitted).

Federal law makes clear that AmeriCorps participants are not employees of their sponsor organizations. Section 12511(30)(B) states that an AmeriCorps participant "shall not be considered to be an employee of the organization." Moreover, the Chief Executive Officer ("CEO") of the Corporation for National and Community Service ("CNCS"), which administers the AmeriCorps program, has promulgated regulations that further

clarify an AmeriCorps VISTA member's relationship with their sponsor organization. One such regulation specifically provides that "[a] VISTA is not, under any circumstances, considered an employee of the sponsor or subrecipient to which he or she is assigned to serve. No VISTA is in an employment relationship with the sponsor or subrecipient to which he or she is assigned." 45 C.F.R. § 2556.300(e). Hathaway cannot allege an employment relationship under state law without contradicting this federal regulation. Hathaway was "not, under any circumstances," an employee of Defendants. *Id.* For that reason, the Court holds that Hathaway's MHRA claims against Defendants related to Hathaway's AmeriCorps participation are preempted.

The Court notes, however, that Hathaway is not left without remedy. CNCS has created procedures for filing and investigating allegations of discrimination that apply to both AmeriCorps and the sponsor organizations. *See* 45 C.F.R. § 1225.4(a). If an AmeriCorps participant believes that they were subjected to illegal discrimination, they may file a complaint with the AmeriCorps EEOP. 45 C.F.R. § 1225.9(a). The EEOP investigates claims brought by participants and recommends a disposition. 45 C.F.R. § 1225.9(c). If the participant does not agree with the recommended disposition, or if the EEOP Director "determines that such an offer is inappropriate," the Director then forwards the complaint to the CEO of CNCS or their designee. *Id.* The participant may then appeal the EEOP's recommended disposition, at which point the CEO or designee reviews the total complaint file and issues a final decision. 45 C.F.R. § 1225.9(c)-(d). If the participant does not appeal, the CEO or their designee can adopt EEOP's recommended disposition as the final agency decision. 45 C.F.R. § 1225.9(d). After a

9

final agency decision has been made, or 180 days from the date of filing the complaint if no final agency decision has been made, the participant "is authorized to file a civil action in an appropriate U.S. District Court." 45 C.F.R. § 1225.21(a).

This administrative process provides a list of possible corrective actions that may be taken by the CEO or their designee. For instance, a participant may be reappointed to the same position or a similar position and/or awarded "reasonable attorney fees and other costs." 45 C.F.R.§ 1225.10. Additionally, the CEO or designee may grant "[s]uch other relief as may be deemed appropriate." *Id.*

It is unclear where Hathaway is at within this administrative process. For the purposes of this order, the status of the administrative case is immaterial. Hathaway at the very least initiated the process by filing a complaint with the EEOP (*see* Compl. ¶ 69), and this process would (or did) provide Hathaway with multiple levels of review, including the opportunity to file a civil action related to the agency's final decision.[3] Moreover, this process would have afforded appropriate corrective action to address Hathaway's grievances against Defendants and/or AmeriCorps. While Hathaway asserted at oral argument that the process is confusing, that does not justify this current action.

Federal law is clear that Hathaway was "not, under any circumstances," an employee of Defendants. 45 C.F.R § 2556.300(e). Hathaway's assertion that they had an

---

[3] Hathaway's "right to challenge the administrative decision in federal court," however, "does not equate to an independent right" to bring an action against Defendants under the MHRA. *O'Dell*, 2021 WL 3861106, at *9.

employment relationship with Defendants under state law conflicts with this regulation. The Court therefore dismisses Hathaway's MHRA claims against Defendants as the claims relate to Hathaway's AmeriCorps participation.

### B. Claims Related to the Job Offer

Hathaway's remaining claims relate to Neighborhood House's employment offer, which does not involve Literacy Minnesota. Hathaway argues that Neighborhood House violated the MHRA when it offered Hathaway a job and then rescinded that offer based on Hathaway's gender and sexual orientation and their reports of discrimination.

The MHRA applies when an employer discriminates "with respect to hiring" because of a person's gender or sexual orientation. Minn. Stat. § 363A.08, subd. 2. To establish a prima facie case of sexual orientation or gender discrimination under the MHRA, Hathaway must demonstrate that they (1) are a member of a protected group; (2) were qualified for the job; (3) suffered an adverse employment action; and (4) circumstances exist which create an inference of discrimination. *Carter v. Dayton Rogers Mfg. Co.*, 543 F. Supp. 2d 1026, 1033 (D. Minn. 2008); *Bergstron-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998). Neighborhood House violated the MHRA if Hathaway's "protected characteristic 'actually motivated'" Neighborhood House's decision to rescind the job offer. *See LaPoint v. Fam. Orthodontics, P.A.*, 892 N.W.2d 506, 514 (Minn. 2017) (reasoning that the defendant violated the MHRA when it rescinded the plaintiff's job offer upon learning that the plaintiff was pregnant if the plaintiff could prove that her pregnancy "actually motivated" the defendant's hiring decision).

11

At the motion to dismiss stage, a plaintiff need not plead a prima facia case, because "[t]he prima facie standard is an evidentiary standard, not a pleading standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal quotations and citation omitted). But the prima facie elements "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (internal quotations and citation omitted).

The Court accepts all allegations in the complaint as true. *Morton*, 793 F.2d at 187. Here, Hathaway alleges that they are part of a protected group based on their gender and sexual orientation. (Compl. ¶ 10.) While Hathaway worked as an AmeriCorps VISTA participant, Neighborhood House offered Hathaway a job as a Volunteer Coordinator. (*Id.* ¶ 55.) Shortly thereafter, Neighborhood House rescinded the offer. (*Id.* ¶ 74.) Hathaway further describes how a Neighborhood House employee, York, harassed Hathaway based on their gender and sexual orientation. (*Id.* ¶¶ 19-30.) York spat on Hathaway when they wore Pride apparel and acted aggressively towards Hathaway as they worked. (*Id.*) Hathaway reported this harassment to Neighborhood House, and the Director of Human Resources said she would investigate. (*Id.* ¶¶ 40-43.)

While Hathaway has clearly alleged that York targeted Hathaway because of their gender identity and sexual orientation, Hathaway has failed to plausibly connect this conduct to Neighborhood House's hiring decision. As Hathaway noted, they were "open about their non-binary gender and their sexual orientation" (*Id.* ¶ 18), meaning that Neighborhood House was likely aware of Hathaway's gender identity and sexual orientation before it offered Hathaway a job. Moreover, Hathaway alleges that the Director of Human Resources was concerned about York's conduct and described the

12

allegations as serious. (*Id.* ¶ 43.) Significantly, Hathaway does not allege any facts that would support an inference that those involved in the hiring process at Neighborhood House harbored discriminatory animus towards Hathaway. In other words, Hathaway has failed to plausibly allege that their gender or sexual orientation motivated, in any way, Neighborhood House's decision to rescind their job offer. The Court will therefore dismiss this claim (Count 1) against Neighborhood House without prejudice.

Hathaway also alleges that Neighborhood House retaliated against them after they reported their claims of discrimination. In order to establish a prima facie case of retaliation, Hathaway must demonstrate that (1) they engaged in statutorily-protected conduct; (2) Neighborhood House took adverse employment action against them; and (3) a causal connection exists between the two. *Carter*, 543 F. Supp. 2d at 1034 (citation omitted). Hathaway alleges that they reported to Neighborhood House instances of sexual orientation, race, and gender discrimination (Compl. ¶ 54), and shortly after their report, Neighborhood House rescinded Hathaway's job offer. (*Id.* ¶ 74.) These allegations are enough to establish a plausible claim for retaliation under the MHRA.

While Neighborhood House argues that it is unclear whether Neighborhood House "formally offered" Hathaway a position or whether "Ms. Berger had any authority to offer a position on behalf of Neighborhood House" (Doc. No. 17 at 5), those factual issues require further discovery and do not impact the Court's decision today. For purposes of this motion, and as explained above, Hathaway has sufficiently alleged that they were subjected to retaliation by Neighborhood House.

## CONCLUSION

For the reasons outlined above, the Court dismisses with prejudice Hathaway's Title VII claims (Counts 3 and 4) against both Neighborhood House and Literacy Minnesota. The Court further dismisses with prejudice Hathaway's MHRA claims (Counts 1 and 2) against Literacy Minnesota. Lastly, the Court dismisses Hathaway's MHRA discrimination claim (Count 1) against Neighborhood House without prejudice. Hathaway's MHRA retaliation claim (Count 2) against Neighborhood House survives the motion to dismiss only as the claim relates to Neighborhood House's job offer to Hathaway.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Literacy Minnesota's motion to dismiss (Doc. No. [5]) is **GRANTED**.

2. Hathaway's claims against Literacy Minnesota **ARE DISMISSED WITH PREJUDICE.**

3. Defendant Neighborhood House's motion to dismiss (Doc. No. [10]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Court **GRANTS** Neighborhood House's motion to dismiss Hathaway's Title VII claims (Counts 3 and 4) against Neighborhood House.

  b. The Court **GRANTS** Defendant Neighborhood House's motion to dismiss Hathaway's MHRA discrimination claim (Count 1) against Neighborhood House.

  c. The Court **DENIES** Defendant Neighborhood House's motion to dismiss Hathaway's MHRA retaliation claim (Count 2), only as the claim relates to Neighborhood House's job offer to Hathaway.

4. Hathaway's Title VII claims (Counts 3 and 4) against Neighborhood House are **DISMISSED WITH PREJUDICE.**

5. Hathaway's MHRA discrimination claim (Count 1) against Neighborhood House is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 14, 2023       s/Donovan W. Frank
                 DONOVAN W. FRANK
                 United States District Judge